<u>NOT FOR PUBLICATION</u>

**FILED**

JAMES J. WALDRON, CLERK

November 4, 2011

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/ Nelson Dos Santos,
Deputy

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| Harry Kleinman, | : | |
| | : | CASE NO.:    05-55211  (NLW) |
| Debtor. | : | |
| | : | |
| | : | |
| Steven P. Kartzman, Trustee, | : | |
| | : | Adv. No.:    07-1861 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| Harry Kleinman, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**Before:       HON. NOVALYN L. WINFIELD**

<u>**A P P E A R A N C E S :**</u>

Adam Brief, Esq.
Mellinger, Sanders & Kartzman, LLC
101 Gibraltar Drive, Suite 2F
Morris Plains, NJ 07950
Attorneys for Trustee

Harry Kleinman
3210 Arlington Avenue
Apt. 5K
Bronx, NY 10463-3338
Debtor/Defendant Pro Se

This matter was tried before the court on the Chapter 7 Trustee's objection to discharge under 11 U.S.C. § 727(a)(2)(A) and (B) and (a)(4).  As set forth below, the Debtor's discharge will be denied.

This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(J) and the court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984.  The following constitutes the court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

Testimony at trial was provided principally by the Chapter 7 Trustee and the Debtor, although some testimony was also provided by John J. Phelan, III by both direct testimony and declaration.  At trial the Trustee identified and testified about various omissions made by the Debtor. Since the nondisclosure regarding the items set forth below provide ample basis for denial of discharge, the court need not reach these other matters.  The court finds the following facts based on its assessment of the trial testimony, the exhibits placed in evidence, the Joint Stipulation of Facts, and the court's review of the docket.

### 1.    Background

On October 14, 2005 ("Petition Date"), acting pro se, Harry Kleinman ("Debtor") filed a Chapter petition.  Steven P. Kartzman ("Trustee") was appointed as the Chapter 7 Trustee on November 14, 2005, and has continued in that capacity to date.  The § 341(a) Meeting of Creditors ("Creditors' Meeting") was held on January 13, 2006.  Based on information obtained at the

Creditors' Meeting and other documents, the Trustee filed a Notice of Assets and Request for Notice

to Creditors.  The Trustee obtained extensions of the deadline for objection to discharge up to and

including June 30, 2007.  On June 29, 2007 the Trustee filed a complaint objecting to the Debtor's

discharge under § 727(a)(2)(A) and (B) as well as § 727(a)(4) of the Bankruptcy Code.


### 2.    CREDITORS' MEETING

The Trustee testified that he examined the Debtor under oath at the Creditors' Meeting.  The

Trustee further stated that at the outset he queried the Debtor as to (i) whether the bankruptcy

schedules and the statement of financial affairs were complete and contained all of the Debtor's

assets and liabilities, and (ii) whether any changes were needed.  The Debtor responded that all

assets and liabilities were set forth and no changes were needed.  The Trustee indicated that the

Debtor appeared familiar with and knowledgeable about his financial affairs.  The Trustee noted that

the Debtor stated that he had previously been the President of Stern's and the Chief Financial Officer

of Federated Department Stores.


### 3.    GENERAL VISION SERVICES, INC.

The Trustee testified that during his examination of the Debtor at the Creditors' Meeting he

asked the Debtor about the lawsuit against General Vision Services, Inc. ("GVS"), that was

identified on the Debtor's statement of financial affairs.  The Debtor informed the Trustee that he

had been the Chief Administrative Officer of GVS, and also owned shares in GVS. The Debtor

further disclosed that an involuntary Chapter 11 proceeding was commenced against GVS several

years earlier and that after the order for relief was entered the case was subsequently converted to

a Chapter 7 case.  The Debtor testified that he believed that he held valuable claims against GVS.

3

The Trustee understood from the Debtor's testimony that the Debtor was describing litigation claims.  The Trustee testified that at the Creditors' Meeting, the Debtor did not disclose that with the  assistance of Mr. Phelan he had filed three proofs of claim in the GVS bankruptcy: a prepetition claim for $209,821.84, a gap period claim for $82,297.79 and an administrative expense claim for $283,780.81, to which the GVS Trustee had filed an objection.

The Debtor concedes that the GVS claims were still pending and the GVS case was still active when he filed his Chapter 7 case.  The Debtor claims that he did not disclose the proofs of claim because GVS asserted claims against him that were  larger, and he therefore believed the proofs of claim were likely worthless.  The Debtor pointed out that he listed GVS as a creditor with a claim of $1,000,000.  Mr. Phelan likewise minimized the importance of the GVS proofs of claim, stating that given the little communication with the GVS Trustee prior to the Debtor's bankruptcy, the age of the bankruptcy case, and their understanding that GVS had few assets from which to pay claims, the Debtor's failure to schedule his proofs of claim against GVS as assets was simply an oversight.  This position is undercut by the fact that the Debtor and Mr. Phelan admitted that both before and after the Debtor's Chapter 7 case was filed they were engaged in discussions with the GVS Trustee in order to resolve his objection to the Debtor's administrative claim in the GVS case. The Trustee first learned of the GVS claims from Mr. Phelan in March 2008, approximately two and a half years after the Debtor filed his Chapter 7 case.  The GVS Trustee ultimately settled the Debtor's administrative claim in the GVS bankruptcy for $15,000.00.

### 4.    <u>THE CARR LITIGATION</u>

The Debtor listed litigation against David Carr ("Carr") on his statement of financial affairs, although he did not include the Carr litigation or its settlement on Schedule B.  At the Creditors'

4

Meeting the Debtor testified that the Carr litigation was settled for approximately $25,000 in or about November 2004. After the Creditors' Meeting the Trustee learned that the Carr litigation was settled in August 2005, and net of attorney fees, the sum of $15,932.32 was wire transferred to an account in the name of the Klienman Family Trust on December 23, 2005, approximately three weeks prior to the Creditors' Meeting.

5.    **KLEINMAN FAMILY TRUST**

The Debtor failed to disclose on his petition an interest in a trust established in December 1999 by Jerome Kleinman and Sarah Kleinman as grantors ("Kleinman Family Trust"). The Debtor and his son, Matthew Kleinman, are both trustees and beneficiaries. As of the Petition Date the Kleinman Family Trust had holdings valued between $250,893 and $290,390.

Only in response to the Trustee's questions at the Creditors' Meeting regarding the sale of the Debtor's cooperative apartment did the Debtor disclose the existence of a trust. The Trustee learned that prepetition, the Debtor contributed his own funds as follows:

a)    in or about July, 2004, the Debtor contributed the amount of approximately $175,000, which funds were generated from the sale of a co operative unit owned by the Debtor;

b)    in December 2004, the Debtor contributed an additional $44,954, which funds were generated from the sale of a condominium owned by the Debtor in Florida;

Additionally, as described above, after the Petition Date, the proceeds of the Carr litigation were deposited into the Kleinman Family Trust.

At the Creditors' Meeting, the Trustee asked for documentation regarding the Carr litigation and the Kleinman Family Trust. When the documents were not forthcoming, the Trustee issued a subpoena for production and scheduled a Bankruptcy Rule 2004 Examination, which was held on

December 21, 2006.  As a result of the document production and deposition the Trustee learned that

both prepetition and postpetition the Debtor withdrew funds from the Kleinman Family Trust for

his own use.

## CONCLUSIONS OF LAW

The Bankruptcy Code grants a debtor a discharge unless one of the enumerated exceptions

contained in § 727(a) applies.  Under Bankruptcy Rule 4005 the objector to a debtor's discharge

bears the burden of proving his case by a preponderance of the evidence.  Grogan v. Garner, 498

U.S. 279, 287 (1991).  Further, it is widely held that the discharge provision is to be construed

liberally in favor of the debtor and strictly against the objector.  Rosen v. Bezner, 996 F.2d 1527,

1531 (3d Cir. 1993); Cadle Co. v. Duncan (In re Duncan), 562 F.3d 688, 695 (5th Cir. 2009).

Nonetheless, it is equally well accepted that only the "honest but unfortunate debtor" is entitled a

discharge."  Grogan, 498 U.S. at 286-87.


1.      **§ 727(a)(2)(B)**

The Trustee objects to discharge under § 727(a)(2)(A) as well as (a)(2)(B).  Because the

court finds that the Trustee has amply established that the Debtor concealed property of the estate

after the Petition Date, there is no need to separately address § 727(a)(2)(A).

Section 727(a)(2)(B) provides in pertinent part that a debtor's discharge my be denied if

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the
estate charged with custody of property under this title, has transferred, removed,
destroyed, mutilated, or concealed, or has permitted to be transferred, removed,
destroyed, mutilated, or concealed ... property of the estate, after the date of the filing
of the petition.

11 U.S.C. § 727(a)(2)(B); In re Garland, 385 B.R. 280, 294-95 (Bankr. E.D. Okla. 2008).

6

The initial element of this section requires actual intent, which may be demonstrated by circumstantial evidence, as well as inferences from the debtor's conduct.  Garland, 385 B.R. at 295; Scimeca v. Umanoff, 169 B.R. 536, 542-43 (D.N.J. 1993).  The elements of a § 727(a)(2)(B) claim differ from § 727(a)(2)(A) only to the extent that the postpetition period is the relevant time period, the need to demonstrate the subjective intent to transfer or conceal property of the estate remains the same.  See In re Juehring, 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005).

The court finds that postpetition the Debtor concealed from the Trustee (i) the proofs of claim that he had filed in the GVS bankruptcy , (ii) the settlement proceeds from the Carr litigation, and (iii) his interest in the Kleinman Family Trust.  The court does not find credible the Debtor's assertion that he thought the claims worthless.  The testimony establishes that both before and after the Petition Date the Debtor knew that Mr. Phelan was negotiating with the GVS Trustee regarding the Debtor's claim in the GVS case.  Yet, the Debtor did not ensure that this information was made known to the Trustee in the case at hand.  The Debtor's Trustee only learned of the potential payment on the Debtor's claims in the GVS bankruptcy approximately two and a half years after the Debtor filed his Chapter 7 case.  No disclosure of this interest was made on the Debtor's petition, at the Creditors' Meeting, or at the Debtor's deposition under Bankruptcy Rule 2004.

The court also finds that the failure to schedule the Kleinman Family Trust constitutes a postpetition concealment.  At the Creditors' Meeting the Debtor did not inform the Trustee that his schedules should reflect an interest in the Kleinman Family Trust.  Rather the Trustee's questioning at the Creditors' Meeting resulted in disclosure of the Debtor's interest.  Notably, despite the Trustee's request for documentation regarding the

7

creation of the trust and its assets, no such documentation was produced until the Trustee

served a subpoena for its production.  After review of the documents and the Debtor's

testimony at Rule 2004 examination the Trustee was able to determine that the Kleinman

Family Trust was created in part for the Debtor's benefit, was funded in part by the Debtor,

and that the Kleinman Family Trust was a self-settled trust.[1]

Further indicating the intentional non-disclosure of the Kleinman Family Trust and

the funds held in its investment account (over $200,000 as of the Petition Date) is the

Debtor's concealment of when he received the proceeds of the Carr litigation and his

disposition of those proceeds.  The Debtor did disclose the Carr litigation on his statement

of financial affairs, and did disclose that the litigation had been settled for approximately

$25,000.00.  However, he did not disclose to the Trustee that postpetition, and merely three

weeks prior to the Creditors's Meeting, the net settlement proceeds were wired into the

Kleinman Family Trust account.  It is not credible that this was an unintentional omission.

Like the Trustee, this court found the Debtor to be knowledgeable about his financial affairs.

Further, as a sophisticated businessman the Debtor surely  understood the fact that the

Kleinman Family Trust and the Carr litigation settlement proceeds were assets that should

have been disclosed.  This is particularly so given that the Debtor had some familiarity with

bankruptcy in light of his participation in the GVS bankruptcy case.  Further, at the

Creditors' Meeting the Debtor was placed under oath and invited to provide any additional

information.  There was no indication from the Debtor's trial testimony that he did not

understand the significance of the oath or the need to provide full disclosure regarding his

---

[1]Under New York law a self-settled trust does not insulate a debtor from his creditors.  In
re Cameron, 223 B.R. 20, 24 (Bankr. S.D. Fla 1998).

assets.

**2.**       **§ 727(a)(4)(A)**

Section 727(a)(4)(A) of the Code provides that discharge will be denied when "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  The purpose of § 727(a)(4)(A) is to ensure that "complete, truthful and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction."  In re Tully, 818 F.2d 106, 110 (1st Cir. 1987).  To make out a § 727(a)(4)(A) claim, the Trustee must prove that the Debtor knowingly and fraudulently made a false oath and that the false oath related to a material fact.  Scimeca, 169 B.R. 542; In re Segal, 195 B.R. 325, 332 (Bankr. E.D. Pa. 1996).  A false oath that is sufficient for denial of discharge may consist of a false statement or omission in the debtor's schedules or a false statement by the debtor at an examination during the course of the bankruptcy case.  See In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984).  Fraudulent intent to make a false oath may be established by circumstantial evidence or by inferences drawn from a course of conduct.  Scimeca, 169 B.R at 543; In re Zimmerman, 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005).  Further, a false oath is material and sufficient to bar discharge if it relates to the debtor's "business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  In re Calder, 907 F.2d 953, 955 (10th Cir. 1990)(citing Chalik, 748 F.2d at 618); Scimeca, 169 B.R. at 543.

The court agrees with the Trustee that by failing to properly disclose (i.e., concealing) the following matters the Debtor made false oaths regarding the state of his

9

financial affairs:

    a.    the existence of a pre-petition claim of $209,821.84, a gap period claim of $82,297.79, and an administrative claim of $283,780.81 filed by the Debtor, in the GVS case, pending in the Bankruptcy Court for the Southern District of New York;

    b.    the Debtor's interest in the Kleinman Family Trust (until questioning at the 341(a) meeting), and that the Kleinman Family Trust bank account was utilized by the Debtor on an as-needed basis, on the Debtor's sole authorization;

    c.    that the David Carr litigation was settled shortly before the Petition Date, and the proceeds received by the Debtor were contributed to the Kleinman Family Trust;

    d.    the post-petition receipt of settlement funds of $15,932.00 from the Carr litigation.

The Debtor's assertion that he believed that the GVS claims were largely worthless does not excuse his failure to list the claims on his petition and testify regarding them at the Creditors' Meeting. A debtor must disclose even seemingly worthless assets. <u>Scimeca</u>, 169 B.R. at 543. "The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate." <u>In re Clarke</u>, 332 B.R. 865, 872 (Bankr. C.D. Ill. 2005); <u>Morrel, West & Saffa, Inc. v. Riley (In re Riley)</u>, 128 B.r. 567, 569 (Bankr. N.D. Okla. 1991)("The Debtor cannot omit information required of him simply because he believes or decides the property omitted has no value or the information is not necessary.").

However, "where the untruth was the result of mistake or inadvertence," a discharge should not be denied. <u>Clarke</u>, 332 B.R at 872. The court does not find credible the Debtor's stated reason for nondisclosure, and thus does not find inadvertence or mistake. The Debtor is a sophisticated businessman and had the assistance of counsel in filing and prosecuting the disposition of the sizable

GVS claims.  The Debtor was the Chief Administrative Office of GVS and, both before and after

filing his own case, the Debtor and his counsel negotiated with the GVS Trustee regarding the

Debtor's $283,780.81 administrative expense claim.  From these circumstances, the court infers that

the claims, particularly the administrative expense claim, were intentionally concealed.  Because of

the Debtor's sophistication as a businessman the court also finds that the failure to disclose his

interest in the Kleinman Family Trust was intentional and intended to mislead.  As of the petition

Date the Kleinman Family Trust had a value of over $200,000, and the Debtor testified that he was

both a trustee and a beneficiary, and could withdraw funds at will.   In light of his business

background and the foregoing facts it is simply not possible to conclude that the Debtor

misunderstood the need to identify the Kleinman Family Trust at Line 19 on Schedule B, which

requires disclosure of "contingent and non-contingent interest in estate of a decedent, death benefit

plan, life insurance policy or **trust**." (Emphasis added). The Debtor answered "none" in response

to Line 19.   Equally incomprehensible is the Debtor's failure to disclose to the Trustee that

postpetition, and merely three weeks prior to the Creditors' Meeting, the Carr litigation settlement

proceeds were wire transferred into the Kleinman Family Trust investment account.  Particularly

when these nondisclosures are considered together it is evident that a pattern emerges: Assets having

value or likely to have value were concealed.

   The fact that the Debtor ultimately disclosed these matters to the Trustee does not provide

an adequate defense to the Trustee's objection.  As the Trustee points out, if merely amending his

schedules or subsequently providing documents were enough there would be little meaning or

purpose to § 727(a).  See In re Spitko, 357 B.R. 272, 313 (Bankr. E.D. Pa. 2006); Chalik, 748 F.2d

at 618-19; Matter of Kilson, 83 B.R. 198, 203 (Bankr. D. Conn. 1988)("The inference of innocent

intent is slight where the debtor has changed his testimony or amended his schedules after the trustee

or creditors have already discovered what the debtor sought to hide, or when the change in testimony

or amended schedules are precipitated by the trustee's  persistence in uncovering the truth.").

Equally unavailing is any suggestion that the Debtor's pro se status excuses the concealment.  All

debtors are obligated to provide complete and accurate information on their schedules.  In re Ashraf,

367 B.R. 151, 156 (Bankr. D. Ariz. 2007); In re McKain, 325 B.R. 842, 848 (Bankr. D. Neb. 2005).

The petition, schedules and statement of financial affairs are required to be signed under oath for

the very purpose of ensueing accuracy and completeness.

## **CONCLUSION**

As set forth above the Debtor's fraudulent non-disclosures require denial of discharge under

§ 727(a)(2)(B) and (a)(4)(A).

Dated: November 4, 2011                    ____/S/_____
                                           NOVALYN L. WINFIELD
                                           United States Bankruptcy Judge

12